GEORGE R. HODGDON *vs.* THE NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

A contract to deliver freight at a port implies, in the absence of any special provision and of any custom to discharge into lighters, that the carrier is to bring his vessel to some wharf or convenient or customary place of discharge. The master of a vessel received a cargo of coal to be delivered to the defendants at the port of New Haven, the consignees to have, by the bill of lading, a certain time for receiving the cargo, after which they were to pay demurrage. On arriving at the port he gave notice to the defendants, but was not able to bring his vessel to any dock on account of the ice, and was detained several days beyond the stipulated time, waiting for his turn to be towed to a dock through a way kept open in the ice by the defendants by means of a steam tug. Held that he was not entitled to demurrage.

ASSUMPSIT for demurrage; brought to the Court of Common Pleas of New Haven County, and tried to the court on the general issue, before *Harrison, J.* Facts found and judgment rendered for the defendants, and a motion for a new trial by the plaintiff. The case is fully stated in the opinion.

*R. S. Pickett,* in support of the motion, cited Abott on Shipping, 311; Parsons on Shipping, 314; *Haaman* v. *Gaudolph,* 1 Holt N. P., 35, 38; *Randall* v. *Lynch,* 2 Camp., 352, 355; *Philadelphia & Reading R. R. Co.* v. *Northam,* 2 Benedict, 1, 5; *Keen* v. *Audenreid,* 5 id., 535; *Lake* v. *Hurd,* 38 Conn., 536.

*G. H. Watrous,* contra, cited Bouvier's Law Dict., *Demurrage;* Benedict on Admiralty, § 297; Redfield on Carriers, §§ 107, 108; *Douglass* v. *Moody,* 9 Mass., 548; *Aylward* v. *Smith,* 2 Lowell's Dec., 192; *Brereton* v. *Chapman,* 7 Bing., 559; *Pingle* v. *Mollett,* 6 Mees. & Wels., 79; *Kell* v. *Anderson,* 10 id., 498.

PARDEE, J. This is an action of assumpsit for demurrage.

On or about December 14th, 1876, the plaintiff received on board of a vessel at Baltimore a cargo of coal consigned to the defendants at New Haven, at which port he reported himself on the 24th of December, and asked for a berth in which to discharge; but he did not come to any dock, for the reason that the ice was so thick that he could reach no wharf in the harbor unless through openings made by steam tugs or otherwise, before the 19th of January, 1877. Between these dates the defendants daily broke a passage through which they towed vessels to and from their own docks. On the day of the plaintiff's arrival they opened a passage and towed through it vessels loaded with coal consigned to themselves which had arrived prior to that day; and when his turn came they opened a passage for and towed his vessel to their dock. The ice delayed him four days, and for this he demands damages. The defendants had a judgment.

Passing the question made as to the power of the person signing the bill of lading, and assuming for the purposes of

the case that the defendants were bound by his act, still the plaintiff is not entitled to a judgment. He undertook to deliver the coal at the port of New Haven; and twenty-four hours after his arrival at that port and notice thereof to the defendants, they were to have, for the reception of the cargo, one day for every hundred tons thereof; after which they were to pay demurrage.

Upon notice to the defendants of the arrival of the plaintiff's vessel at New Haven it was their duty to be ready to receive the coal, or designate some wharf or other proper place where it could be deposited in a reasonable time. They failing in this duty, it was the right of the plaintiff to treat the contract as broken, and deposit the coal at the usual place, if there was any such, or procure one at their expense. The contract to deliver at the port of New Haven implies more than bringing the vessel into water within a line drawn across the mouth of the harbor; in the absence of any special provision and of any custom to discharge into lighters, it imports that the carrier is to bring his vessel to some wharf, or convenient or customary place of discharge, where he can deliver and the consignees can receive the cargo, according to the usage of the port. In the case before us the plaintiff was barred by the frost from every wharf or landing place which the defendants could designate or he could select; he could not deliver the coal upon land; the contract did not oblige them to go upon the ice to receive it; in fact his progress was arrested before he had brought his voyage to the contract termination, and that by no fault of theirs; it was a misfortune which the law must leave where it falls.

As the defendants did not contract to protect the plaintiff against the action of frost, they owed him no duty in respect to it. If for any reason they chose to open a way for the passage of another vessel the contract relation between themselves and the plaintiff was not thereby changed; he acquired no right to the way thus made; such other vessel having gained prior access to and occupied it, as a matter of law it did not exist so far as the plaintiff is concerned.

In *Parker* v. *Winlow*, 7 Ellis & Blackburn, 940, the tides

were neap when the vessel approached the designated wharf, and she ran upon the sand and lay there during some days until the tides were higher.   Lord Campbell, C. J., said: "If when the ship got fixed upon the mud bank the master had given notice that he was ready to discharge there, it might have been open to him to show that it was the duty of the other party to take the cargo there, and, if he could have shown such to be their duty, the lay days would have commenced.   But no such notice was given; there was no suggestion of any custom requiring the consignees to procure lighters; and both sides acted as if they did not contemplate any unloading until the vessel got up to the wharf."   In *McIntosh* v. *Sinclair*, 11 Irish Rep., Com. Law Series, 456, Palles, C. B., said:—"The obligation of the ship owner under the charter party is not alone to carry the cargo to the port of destination, but in addition to deliver it according to the usage of the port.   His duty is not discharged simply by arrival at the port or at the usual place of discharge within the port."   In *Aylward* v. *Smith*, 2 Lowell's Decisions, 192, (District Court of Massachusetts, affirmed by the Circuit Court,) the libellant's vessel came to the respondent's wharf on the 20th of December at high tide and was made fast outside of another vessel which was in the berth.   This last was hauled out on the next day; but the libellant's vessel was then aground and so remained; afterwards the ice made round her and she could not be hauled in for several days. Lowell, J., said:—"The plaintiff says that he arrived at the wharf on the 20th of December and reported to the defendant and ended his voyage.   This argument is specious; but it assumes that the vessel had arrived at the dock or wharf, when in truth she had only very nearly arrived.   It has been held in two English cases concerning cargoes of coals shipped under contracts almost identical with this, that delays within the port for a considerable time owing to a want of sufficient water at the place of delivery would not require the freighter to receive the coals at another place, or cause the lay days to begin, though the contract had the clause that the ship was to go only so near to the place as she could safely get.   It was

held that although she could not safely go up while the tides were neap, yet that was one of the accidents of navigation which a vessel contracting to go to a tidal harbor ran the risk of. The distance at which the ship is kept from her berth by the low water is immaterial, if it be so far that the delivery of the cargo is prevented."

We do not advise a new trial.

In this opinion the other judges concurred.